# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARY GIBBS-BOLENDER,<br><br>Plaintiff,<br><br>v.<br><br>CAG ACCEPTANCE, LLC,<br><br>Defendant. | Case No. 2:14-CV-01684-APG-GWF<br><br>**ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF NEVADA**<br><br>(Dkt. #6) |

Plaintiff Mary Gibbs-Bolender purchased a vehicle under a retail installment sales contract ("RISC") from Chapman Chrysler Jeep, which assigned the RISC to Defendant CAG Acceptance, LLC. A device was installed on her vehicle that allows CAG to remotely disable the vehicle if she defaults on her payments. According to Gibbs-Bolender, Nevada law defines default as failure to make a payment later than 30 days past the payment's due date. But she contends CAG remotely disabled her vehicle on several occasions before payments were more than 30 days late. Gibbs-Bolender brought this action against CAG in Nevada state court on behalf of herself and others similarly situated for various violations of Nevada law.

CAG removed the action to this Court and now moves to compel arbitration based on an arbitration agreement between Gibbs-Bolender and Chapman Chrysler Jeep providing for arbitration of any claims arising out of the vehicle purchase. CAG contends the arbitration agreement requires the arbitrator, not the Court, to decide whether the parties' dispute is subject to arbitration. CAG also argues that even if the Court determines arbitrability, the Court should enforce the parties' arbitration agreement and compel arbitration of this dispute. Gibbs-Bolender responds that Nevada law requires the RISC to contain the parties' entire agreement in a single document but that the arbitration agreement at issue was not contained within the RISC. Gibbs-

Bolender thus argues that, as a matter of law, the arbitration agreement and the clause within that agreement delegating the arbitrability question to the arbitrator are void.

**I. Background**

On September 6, 2013, Plaintiff Gibbs-Bolender purchased a used vehicle on credit from Chapman Chrysler Jeep. (Dkt. #1-3 at 9.) Chapman Chrysler Jeep prepared a RISC using a form agreement required by Nevada law for a Simple Interest Vehicle Contract and Security Agreement. (*Id.* at 9, 32; Dkt. #6-7 at 2-5.) The form RISC[1] defines default for nonpayment as (1) the failure to make payment later than 30 days past the due date or (2) the prospect of payment or realization of collateral is significantly impaired. (Dkt. #1-3 at 35; Dkt. #6-7 at 4.)

The same day Gibbs-Bolender and Chapman Chrysler Jeep executed the RISC, they also entered into a separate arbitration agreement. (Dkt. #6-8.) Pursuant to the arbitration agreement, the parties agreed to submit to arbitration:

> [a]ny claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue), between [Gibbs-Bolender] and [Chapman Chrysler Jeep], which arises out of or relates to the purchase and financing of your vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) . . . .

(*Id.*) The parties also agreed that claims or disputes would not be arbitrated on a class basis. (*Id.*)

According to Gibbs-Bolender, she was not informed that a device was attached to her vehicle until she was driving off the lot and a salesperson placed documentation about it in her glove box. (Dkt. #1-3 at 9-10.) The documentation included the Operating Instructions, which indicated that if payment is not received within two days of the due date, the lender will use the device to remotely disable the vehicle. (*Id.* at 15, 38.)

Chapman Chrysler Jeep assigned the RISC to Defendant CAG. (*Id.* at 10.) CAG contacted Gibbs-Bolender on March 11, 2014, to advise her that her check for the March 1

---

[1] Contract Form No. 97 002 2012 Simple Interest Vehicle Sale, available at http://www.fid.state.nv.us/Notices/2012/No_97-002_2012_SimpleInterestVehicleSale.pdf, last visited on December 9, 2014 (hereinafter "Commissioner's Form").

payment had been dishonored. (*Id.*) CAG disabled her vehicle that same day. (*Id.*) According to Gibbs-Bolender, she was unable to take her sick child to the hospital a few days later because her vehicle was disabled. (*Id.* at 11.) On March 19, Gibbs-Bolender brought her account current and CAG reactivated the vehicle. (*Id.*) Gibbs-Bolender subsequently missed or made late payments, and each time CAG remotely disabled her vehicle before 30 days had passed from the payment due dates. (*Id.* at 11-12.) Gibbs-Bolender alleges she was unable to drive her children to medical appointments during these periods. (*Id.*)

Gibbs-Bolender brought this action on behalf of herself and others similarly situated, arguing CAG violated Nevada law by disabling her vehicle before she was in default under the RISC. Gibbs-Bolender asserts CAG breached the contract and Nevada Revised Statutes Chapter 104 by rendering the vehicle unusable before she defaulted. Gibbs-Bolender also contends CAG violated Nevada Revised Statutes § 97.165, which requires that every RISC be contained in a single document that reflects the parties' entire agreement. Gibbs-Bolender contends CAG violated this provision by setting forth in the Operating Instructions different terms regarding what constitutes a late payment. Additionally, Gibbs-Bolender asserts claims for trespass to chattels, deceptive trade practices, anticipatory breach of contract, and breach of the implied covenant of good faith and fair dealing. She seeks declaratory and injunctive relief, as well as statutory, compensatory, and punitive damages.

CAG moves to compel arbitration based on the arbitration agreement. CAG contends that the question of whether the dispute is subject to arbitration is a matter for the arbitrator to decide, not the Court. Gibbs-Bolender responds that the arbitration agreement and the provision delegating questions of arbitrability to the arbitrator are void. She contends Nevada law requires the parties' entire agreement relating to a RISC be in a single document but the arbitration agreement, and the delegation provision it contains, are separate from the RISC. Alternatively, Gibbs-Bolender argues the arbitration agreement is unenforceable because it is unconscionable.

CAG replies that it used the form required by Nevada law and that form does not contain an arbitration provision. CAG argues that because it must use that form, a ruling that the

arbitration agreement is void because it is not contained within the same document as the RISC would render an entire category of claims incapable of being arbitrated by operation of state law, a result which is prohibited by law. Alternatively, CAG argues that Nevada law requires only that the financing terms be contained in a single document but that the parties may enter into agreements on other matters, such as the arbitration agreement at issue here, without violating the single document rule. Finally, CAG disputes the arbitration agreement is unconscionable.

**II. Who Decides Arbitrability?**

Section 2 of the Federal Arbitration Act ("FAA") creates a policy favoring enforcement of agreements to arbitrate. *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012); 9 U.S.C. § 2. Under the FAA, an arbitration agreement is like any other contract and I must enforce it according to its terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Additionally, arbitration agreements are valid "save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (stating arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability . . . ." (quotation omitted)).

The parties may determine by contract whether the arbitrator or the court decides a particular issue, including the question of whether a particular matter is arbitrable. *Rent-A-Center, West, Inc.*, 561 U.S. at 69-70. Arbitrability presumptively is resolved by the court "[u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (alteration in original, quotation omitted).

A provision in an arbitration agreement that delegates questions of arbitrability to the arbitrator is severable from the rest of an arbitration agreement and constitutes "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc.*, 561 U.S. at 70; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). As a result, if the parties clearly and unmistakably delegate arbitrability questions to the arbitrator, the arbitrator decides arbitrability unless the party resisting arbitration specifically

challenges the enforceability of the delegation provision. *Rent-A-Center*, 561 U.S. at 70. "In other words, when a plaintiff's legal challenge is that [an arbitration agreement] as a whole is unenforceable, the arbitrator decides the validity of the contract, including derivatively the validity of its constituent provisions (such as the [delegation] clause)." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010). "However, when a plaintiff argues that [a delegation] clause, standing alone, is unenforceable—for reasons independent of any reasons the remainder of the contract might be invalid—that is a question to be decided by the court." *Id.* The "material question is whether the challenge to the arbitration provision is severable from the challenge to the contract as a whole." *Id.* at 1001.

Here, the arbitration agreement that CAG initially seeks to enforce is the provision delegating arbitrability questions to the arbitrator. The parties clearly and unmistakably set forth in the arbitration agreement that any dispute, including the arbitrability of any issue, is a matter for the arbitrator to decide. (Dkt. #6-8.) As a result, the question of arbitrability is for the arbitrator unless Gibbs-Bolender specifically challenges the enforceability of the delegation provision.

Gibbs-Bolender has done so. Unlike the plaintiff in *Rent-A-Center*, Gibbs-Bolender specifically and separately challenges the enforceability of the delegation provision. (Dkt. #19 at 24 (stating "neither an agreement to arbitrate disputes nor an agreement to have an arbitrator determine 'the arbitrability of any issue' was formed under Nevada law"), 25 ("No agreement to arbitrate . . . or to delegate issues to an arbitrator was formed under Nevada law.").) Gibbs-Bolender argues no agreement to delegate was formed under Nevada law because the delegation provision is not contained within the RISC and is therefore void under the single document rule in Nevada Revised Statutes § 97.165. Although this argument relies on the same legal theory as one of her challenges to the arbitration agreement overall, it is an independent and severable challenge to the delegation provision. Regardless of whether the arbitration agreement as a whole is enforceable, Gibbs-Bolender contends the delegation provision is unenforceable because it is not

1  contained within the same document as the RISC. Her argument does not depend on a finding
2  that the arbitration agreement as a whole is invalid.

3      At the hearing, CAG suggested that allowing Gibbs-Bolender to challenge the delegation
4  provision and the contract as a whole at the same time or under the same theory would render
5  *Rent-A-Center* meaningless. However, the parties' arguments in this case demonstrate that is not
6  so. Unlike her challenge under the single document rule, Gibbs-Bolender's unconscionability
7  argument is directed at the arbitration agreement as a whole and not specifically at the delegation
8  provision. (Dkt. #19 at 19-23 (arguing the arbitration agreement as a whole is substantively
9  unconscionable because it exempts from arbitration the remedies the lender would employ but
10 requires arbitration of the remedies the borrower would employ)); *D.R. Horton, Inc. v. Green*, 96
11 P.3d 1159, 1162 (Nev. 2004) (stating Nevada generally requires both substantive and procedural
12 unconscionability to invalidate a contract). As a result, whether the arbitration agreement as a
13 whole is unconscionable would be a question for the arbitrator, not the court. *Rent-A-Center,*
14 *West, Inc.*, 561 U.S. 73-75.

15     Because Gibbs-Bolender specifically challenges the delegation provision's validity, I must
16 decide whether the agreement to delegate arbitrability questions to the arbitrator is enforceable.
17 *Id.* at 71 ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at
18 issue, the federal court must consider the challenge before ordering compliance with that
19 agreement under § 4.").[2] However, in determining whether the delegation provision is valid, I
20 will not consider Gibbs-Bolender's unconscionability arguments because those arguments are

21

---

[2] *See also Nitro-Lift Tech., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) ("[A]n arbitration provision is severable from the remainder of the contract . . . and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide." (internal quotation marks and citation omitted)); *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 (stating the court determines challenges to the arbitration agreement's validity, but the arbitrator resolves challenges to the validity of the contract as a whole); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (stating the court resolves a claim that the arbitration clause was fraudulently induced, but the arbitrator decides if the underlying contract as a whole was fraudulently induced); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120 (9th Cir. 2008) ("[O]ur case law makes clear that courts properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself.").

1  directed at the validity of the arbitration agreement as a whole rather than specifically at the
2  delegation provision.

### III. Validity of the Delegation Provision

Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC*, 131 S. Ct. at 1746 (quotation omitted).[3]  I look to Nevada state law to determine whether the delegation provision is a valid contract. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008).

Nevada Revised Statutes § 97.165(1) provides that "[e]very retail installment contract[4] must be contained in a single document which must contain the entire agreement of the parties, including any promissory notes or other evidences of indebtedness between the parties relating to the transaction . . . ."  Section 97.185(1) sets forth what information must be contained within the contract, including the cash sales price, the amount of any down payment, the amount of any insurance, the amount financed, the finance charge, fees, the amount of total payments owed, and the number of payments that must be made.  Section 97.185(2) also allows for "[a]dditional items" to be included "to explain the calculations involved in determining the amount to be paid by the buyer."

In addition to these requirements applicable to RISCs generally, Nevada law directs the Commissioner of Financial Institutions to promulgate form RISCs for use in vehicle sales if:

---

[3] Nevada's single document rule does not apply only to arbitration agreements and does not derive its meaning from the fact that an agreement to arbitrate is at issue.  The single document rule could invalidate other contracts not contained within the RISC.  Consequently, it is a generally applicable contract defense.

[4] A retail installment contract "means a contract, other than a retail charge agreement or an instrument reflecting a sale made pursuant thereto, entered into or performed in this state for a retail installment transaction." Nev. Rev. Stat. § 97.105(1).  A retail installment transaction means "a transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or a retail charge agreement which may provide for a finance charge and under which the buyer agrees to pay the total of payments in one or more installments." *Id.* at § 97.115.  The parties do not dispute the agreement at issue here is a retail installment contract.

      (a) The sale involves the taking of a security interest to secure all or a part of the purchase price of the vehicle;
      (b) The application for credit is made to or through the seller of the vehicle;
      (c) The seller is a dealer; and
      (d) The sale is not a commercial transaction.

Nev. Rev. Stat. § 97.299(1). The Commissioner's forms "must meet the requirements of NRS 97.165, [and] must be accepted and acted upon by any lender to whom the application for credit is made . . . ." Nev. Rev. Stat. § 97.299(2). When selling a vehicle under the circumstances described in § 97.299(1), "the seller and any lender to whom the application for credit is made shall use the forms prescribed pursuant to that section." Nev. Rev. Stat. § 97.301. Pursuant to these statutory commands, the Commissioner has prescribed a form for use in a simple interest vehicle sale.[5] *See* Nev. Admin. Code § 97.050. The form does not address arbitration.

    Here, the parties do not dispute that the sale was made under the circumstances described under § 97.299(1). CAG therefore used the required form contract for the RISC. (Dkt. #6-7.) The parties also entered into a separate arbitration agreement that includes the delegation provision. The issue before me is whether the delegation provision is unenforceable under § 97.165 because it was not physically contained within or attached to the RISC.

    Nevada has not addressed whether the single document rule voids an arbitration agreement set forth in a separate document. *See Picardi v. Eighth Judicial Dist. Ct. of State, ex rel. Cnty. of Clark*, 251 P.3d 723, 724 n.1 (Nev. 2011) (declining to address the issue). By the statute's plain language, it would appear that the delegation provision is void because it is not contained within the RISC.[6] However, the Commissioner's form contemplates that the parties may enter into other agreements not contained within the RISC. For example, the Commissioner's form indicates that the seller makes no representations or warranties "unless the

---

[5] Commissioner's Form.

[6] The buyer cannot waive the protections of Chapter 97. Nev. Rev. Stat. § 97.275 ("No act or agreement of the retail buyer before or at the time of the making of a retail installment contract . . . shall constitute a valid waiver of any of the provisions of this chapter or of any remedies granted to the buyer by law."). Consequently, Gibbs-Bolender's agreement to arbitrate her claims does not waive her argument that the delegation provision is void as a matter of Nevada law.

Page 8 of 12

seller has done so in this contract or in a separate written agreement signed by the seller as the original seller of the collateral."[7]

Most courts that have addressed the issue under similar laws in other jurisdictions have held that the single document rule voids arbitration agreements that are not physically attached to the financing contract. *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 390 (D. Md. 2011); *Larkin v. New Century Auto Sales Inc.*, No. 12-13917, 2014 WL 29119, at *7 (E.D. Mich. Jan. 3, 2014) (unpublished); *Rugumbwa v. Betten Motor Sales*, 136 F. Supp. 2d 729, 733 (W.D. Mich. 2001); *Knight v. Springfield Hyundai*, 81 A.3d 940, 948-49 (Pa. Super. Ct. 2013).[8]  In contrast, the Minnesota Supreme Court held that the applicable statute was aimed only at ensuring all terms relevant to the cost of credit are contained within a single contract but that the parties may enter into other separate agreements, such as arbitration agreements, without running afoul of the single document rule. *Scott v. Forest Lake Chrysler-Plymouth-Dodge*, 611 N.W.2d 346, 351-52 (Minn. 2000).

Were I to adopt what appears to be the majority approach and hold the single document rule voids the arbitration agreement, the rule would invalidate any contract not contained within the RISC, including the delegation provision.  However, CAG is required to use the Commissioner's form and that form does not address arbitration.  If CAG is required to use the Commissioner's form and cannot add to it, the single document rule effectively would preclude arbitration of disputes arising out of any RISC where use of the Commissioner's form is required.  If that is the case, the FAA displaces the single document rule and I must compel arbitration. *See AT&T Mobility LLC*, 131 S. Ct. at 1747.  On the other hand, if CAG can add an arbitration agreement to the Commissioner's form by physically including it in or attaching it to the

---

[7] Commissioner's Form at 10 (all capital letters in original).

[8] *See also Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 622 (11th Cir. 2001) (holding arbitration agreement in separate document invalid under the single document rule contained in the Magnuson-Moss Warranty Act). *But see Patriot Mfg., Inc. v. Dixon*, 399 F. Supp. 2d 1298, 1304 (S.D. Ala. 2005) (holding Magnuson-Moss Warranty Act's single document rules applies only to specific categories of information and parties may enter into separate arbitration agreements without violating the single document rule).

Commissioner's form, and simply failed to do so here, then the single document rule would not stand as an obstacle to Congress's purposes and the FAA would not displace it.

At the January 6, 2015 hearing on the motion, the parties agreed CAG could not add to the Commissioner's form. However, it is unclear from the statutory scheme whether the parties are correct on this question of law. The Commissioner's form contemplates that the parties can add terms, such as an express warranty. But it is unclear whether the parties may add terms that are not alluded to in the form, such as an arbitration agreement.

I conclude this matter is suitable for certification to the Supreme Court of Nevada. Pursuant to Nevada Rule of Appellate Procedure 5, that court may answer questions of law certified to it by a United States District Court upon the certifying court's request:

> if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state.

Nev. R. App. P. 5(a); *see also Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.3d 1161, 1163-64 (Nev. 2006). A certifying court may invoke Rule 5 upon its own motion. Nev. R. App. P. 5(b). A certification order must include:

> (1) [t]he questions of law to be answered; (2) [a] statement of all facts relevant to the questions certified; (3) [t]he nature of the controversy in which the questions arose; (4) [a] designation of the party or parties who will be the appellant(s) and the party or parties who will be the respondent(s) in the Supreme Court; (5) [t]he names and addresses of counsel for the appellant and respondent; and (6) [a]ny other matters that the certifying court deems relevant to a determination of the questions certified.

Nev. R. App. P. 5(c).

The matters before me involve the meaning of a Nevada statutory scheme. I cannot determine the threshold question of whether the delegation provision is enforceable without an interpretation of that statutory framework. If CAG must use the Commissioner's form and cannot add an arbitration agreement to it, either by adding one to the form or by a separate arbitration agreement, then Nevada law effectively "prohibits outright the arbitration of a particular type of claim." *AT&T Mobility LLC*, 131 S. Ct. at 1747. If that is how the Supreme Court of Nevada

1  interprets the statute, the FAA would then displace Nevada law in the context of the issue before
2  me, the single document rule would no longer apply, and I would enforce the delegation provision
3  and compel arbitration. *Id.* Conversely, the Supreme Court of Nevada could interpret the
4  statutory scheme to mean CAG must use the Commissioner's form but can add an arbitration
5  agreement to it so long as the arbitration agreement is contained within the RISC.  Under that
6  interpretation, Nevada law would not outright prohibit arbitration of a particular type of claim, the
7  delegation provision at issue here would be unenforceable under the single document rule, and I
8  would not compel arbitration under the delegation provision.  Finally, the court could rule that the
9  one document rule requires only that financial and other related terms must be contained in one
10 document but the parties are free to use additional documents to address non-finance terms (e.g.,
11 warranties and arbitration).  Under that interpretation, I would enforce the delegation provision
12 and compel arbitration.  Consequently, the Supreme Court of Nevada's resolution of the statutory
13 framework's meaning may be determinative of whether Gibbs-Bolender's lawsuit may proceed in
14 federal district court or must be referred to an arbitrator.
15     I therefore certify the following question to the Supreme Court of Nevada:
16     1.  What is the proper interpretation of the single document rule in Nevada Revised
17 Statutes § 97.165 with respect to an arbitration agreement contained in a separate document
18 where the seller must use Contract Form No. 97 002 2012 Simple Interest Vehicle Sale
19 promulgated by the Commissioner of Financial Institutions?
20     Because Gibbs-Bolender is the party seeking to invalidate the delegation provision under
21 Nevada law and her challenge is what generates my decision to certify, I will designate Plaintiff
22 Mary Gibbs-Bolender as the appellant, and Defendant CAG Acceptance, LLC as the respondent.
23 The names and addresses of the parties' counsel are as follows:

**Counsel for Plaintiff/Appellant Mary Gibbs-Bolender:**
J. Randall Jones
Carol L. Harris
Kemp, Jones & Coulthard, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

Dan L. Wulz
Sophia A. Medina
Legal Aid Center of Southern Nevada, Inc.
725 E. Charleston Blvd.
Las Vegas, NV 89104

**Counsel for Defendant/Respondent CAG Acceptance, LLC:**

Kevin R Stolworthy
Tracy DiFillippo
Conor P. Flynn
Brandon P. Johansson
Armstrong Teasdale LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169

Edwin D. Fleming
Jake D. Curtis, II
Melissa Iyer Julian
Burch & Cracchiolo PA
702 E. Osborn Rd., Suite 200
Phoenix, AZ 85014

**IV.  Conclusion**

IT IS THEREFORE ORDERED that the Clerk of the Court shall forward a copy of this Order to the Supreme Court of the State of Nevada, 201 South Carson Street, Carson City, Nevada 89701, under official seal.

IT IS FURTHER ORDERED that all proceedings in this case are hereby stayed pending a decision from the Supreme Court of Nevada.  The parties are ordered to file a status report in this court by July 5, 2015.

DATED this 18th day of February, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE